IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.              )<br>)<br>DARNELL LEE WASHINGTON, )<br>)<br>Defendant.  ) | Criminal Action No. 1:16-cr-110 (RDA) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Darnell Lee Washington's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion"). Dkt. 127. Having considered the Motion, the Government's Opposition (Dkt. 128), and the attached Exhibits, it is hereby ORDERED that Defendant's Motion for Compassionate Release (Dkt. 127) is DENIED for the reasons that follow.

I. BACKGROUND

On August 18, 2016, Defendant was charged with conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 846 and 841(a)(1), and distribution of a controlled substance resulting in serious bodily injury and death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2. Dkt. 46. The indictment alleged that Defendant sold heroin containing fentanyl to one of his regular customers who shared it with three other individuals. *Id.* The indictment further alleged that one individual experienced a non-fatal fentanyl overdose and a second individual suffered a fatal fentanyl overdose. *Id.*

On October 18, 2016, Defendant pleaded guilty to one count of conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 846 and 841(a)(1). Dkt. 56. The United States

and Defendant agreed upon a sentence of 180 months. Dkt. 84. On January 10, 2017, Judge Gerald Bruce Lee sentenced Defendant to 177 months incarceration, which included a three-month downward adjustment to account for time served, and five years of supervised release. Dkt. 93.

On May 18, 2020, Defendant filed a request for compassionate release to the Warden of Federal Correctional Institute (FCI) Cumberland. Dkt. 115, Ex. 1. He asked for compassionate release or home confinement due to his obesity and high blood pressure. *Id.* His request was denied by the Warden, and on August 1, 2020, Defendant filed his first Motion for Compassionate Release in this Court. Dkt. 115. That Motion cited his vulnerability to COVID-19 as the basis for compassionate release. *Id.* On October 26, 2020, this Court denied his Motion. Dkt. 125.

On May 25, 2021, Defendant filed his second request for compassionate release with the Warden of FCI Cumberland. Dkt. 128, Ex. 1. The sole reason Defendant listed to justify his release in this instance was a sentencing disparity. *Id.* On June 9, 2021, the Warden denied his request. Dkt. 128, Ex. 2. On June 24, 2021, Defendant filed his second Motion for Compassionate Release with this Court, citing a sentencing disparity, his susceptibility to COVID-19, and his "in prison" rehabilitation as reasons justifying compassionate release. Dkt. 127. Defendant's second Motion for Compassionate Release is now before this Court.

## II. ANALYSIS

Generally, a district court cannot modify a prisoner's sentence once imposed. *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022). However, 18 U.S.C. § 3582(c) permits prisoners to request compassionate release prior to serving their entire prison sentence. Compassionate release can be granted for limited reasons outlined by the statute, including the presence of "extraordinary and compelling" reasons. 18 U.S.C. § 3582(c)(1)(A). Under § 3582(c)(1)(A), if the defendant shows that "extraordinary and compelling reasons warrant such a reduction[,]" then

the court must also weigh the § 3553(a) sentencing factors to determine whether they weigh for or against release.

Defendant requests that this Court reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). He claims that three "extraordinary and compelling" reasons warrant his release. First, he argues that the difference in his sentence and his codefendant's sentence creates an "extraordinary and compelling" reason for his release. Dkt. 127 at 16. Second, he claims that his susceptibility to COVID-19 is "extraordinary and compelling." *Id.* at 21-23. Finally, he points to his "in prison" rehabilitation, in combination with his other reasons, as a basis for his release.[1] *Id.* at 23.

The government opposes Defendant's Motion on all three grounds. Dkt. 128. The government also argues that this Court need not even consider Defendant's Motion on the merits because Defendant failed to fully exhaust his administrative remedies before filing it. Dkt. 128 at 14.

a. Exhaustion

Prior to the First Step Act of 2018, compassionate release petitions could only be brought by the Bureau of Prisons (BOP). *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). An investigation into the BOP's compassionate release process revealed that the BOP significantly mismanaged the program and caused delays so significant that some inmates died before receiving an answer from BOP. *Id.* In an effort to reform this process, "Congress amended § 3582(c)(1)(A)

---

[1] Defendant argues that his "record of good conduct and extensive rehabilitation after sentencing" is another reason warranting a sentence reduction. Dkt. 127 at 23. He notes the Court's prior acknowledgement "that Defendant has taken strides to rehabilitate himself[.]" *Id.* at 25. Accordingly, he asks the Court to find his rehabilitation, both alone and in conjunction with his vulnerability to COVID-19 and the sentencing disparity, an "extraordinary and compelling" reason for his release. *Id.* at 23-25.

3

to remove the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions," through the First Step Act. *Id.* (internal quotation marks omitted). Under the amended statute, prisoners can bring compassionate release petitions to the sentencing court "after the defendant has fully exhausted all administrative rights . . . *or* the lapse of 30 days from receipt of such request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The government contends that Defendant's Motion is not ripe for review because he has not exhausted all of his administrative remedies. Dkt. 128 at 14. The government correctly notes that Defendant only cited a sentencing disparity between his sentence and his codefendant's sentence as the basis for his release in his request to the Warden of FCI Cumberland. Dkt. 128, Ex. 1. In his Motion, Defendant cites additional reasons supporting his release: his susceptibility to COVID-19 and his rehabilitation. Dkt. 127. The government claims Defendant must present each reason supporting his claim for compassionate release to the Warden before presenting the claims to this Court. Dkt. 128 at 14.

The standard for administrative exhaustion that the government asks this Court to impose does not comport with the standard the Fourth Circuit has previously imposed on prisoners seeking compassionate release. The Fourth Circuit has held that § 3582(c)(1)(A) provides two separate options for a prisoner to request compassionate release, "one of which does not require exhaustion of administrative remedies[.]" *United States v. Muhammad,* 16 F.4th 126, 131 (4th Cir. 2021). The government seeks to impose a *de facto* issue exhaustion requirement. Dkt. 128 at 14. However, recent authority from the Fourth Circuit specifically addresses issue exhaustion:

> In short, the defendant is not required to exhaust his administrative remedies with BOP *at all* beyond making the initial request for compassionate release. Therefore, we see no reason to limit his motion for compassionate release in the district court

4

to only those grounds for compassionate release he identified in his request to the BOP. . . . We hold that § 3582(c)(1)(A) does not require issue exhaustion.

*Ferguson*, 55 F.4th at 268-69 (emphasis in original). Because the Fourth Circuit does not require issue exhaustion, this Court finds the motion in whole ripe for review. This Court will consider all three of the arguments raised in Defendant's Motion to determine whether "extraordinary and compelling" reasons for compassionate release are present. 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d 271.

### b. Defendant's Compassionate Release Motion

The term "extraordinary and compelling" is not defined in § 3582(c)(1)(A)(i). Instead, § 3582(c)(1)(A) requires a sentence reduction to "be consistent with applicable policy statements." *McCoy*, 981 F.3d at 281 (internal quotation marks omitted). The Sentencing Commission provides a policy statement for compassionate release petitions brought by the BOP. U.S.S.G. § 1B1.13. However, there is "no applicable policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. Kindambu*, Crim. No. 1:20-cr-260, 2023 WL 159767, at *2 (E.D. Va. Jan. 11, 2023) (internal quotation marks omitted) (citing *McCoy*, 981 F.3d at 284). Thus, this Court has already joined others in "treat[ing] the § 1B1.13 cmt. n.1(A)-(C) factors as a guide, but not as an exhaustive list" for determining what constitutes an extraordinary or compelling reason for release. *Kindambu*, 2023 WL 159767, at *2.

### 1. Sentencing Disparity

Defendant cites the sentencing disparity between his prison sentence and his codefendant's sentence as the first reason justifying his compassionate release. Dkt. 127 at 16. In this regard, Defendant has served less than half of his 177-month sentence, while his codefendant has already

completed his sentence. Dkt. 127 at 14. Defendant claims that his codefendant (his supplier) was the only one who was aware that the drugs he sold to Defendant were cut with fentanyl, and thus, he is more culpable than Defendant in the death that occurred due to the fentanyl. *Id.* The government claims that the difference in the sentences is due to the government's lack of evidence that the codefendant was the supplier of the fatal dose sold by Defendant. Dkt. 128 at 29.

Although a district court may consider any extraordinary or compelling reason a defendant might raise to justify compassionate release, *McCoy*, 981 F.3d at 284, the compassionate release framework is "not meant to provide movants with an opportunity to simply relitigate their sentencings." *United States v. Henry*, Crim No. SAG-05-0147, 2022 WL 2905057, at *2 (D. Md. Jul. 22, 2022). Sentencing is meant to be an individualized process with each judge considering the § 3553(a) factors as they relate to that particular defendant. *See id.* at *3 (refusing to find an "extraordinary and compelling" reason in a sentencing disparity specifically considered and imposed by the sentencing judge). It is not "extraordinary and compelling" when a judge intentionally imposes a longer sentence based on the culpability of a defendant. *Id.*

While courts have found some sentencing disparities to be "extraordinary and compelling" reasons warranting compassionate release, those disparities often result from changes to the law. *See McCoy*, 981 F.3d at 285-86 (upholding the district court's determination that the disparity between the defendants' original sentences and "the sentences Congress now believes to be an appropriate penalty" constituted an "extraordinary and compelling" reason for compassionate release); *United States v. Hill*, Crim. No. 3:14-cr-114, --- F. Supp. 3d ---, 2023 WL 35211, at *7-8 (E.D. Va. Jan. 4, 2023) (finding a disparity of 104 months between the defendant's sentence and the new guideline range to justify compassionate release).

This case is distinguishable from cases where courts in this circuit have found a disparity between codefendants to constitute an "extraordinary and compelling" reason for release. In *United States v. Eccleston*, the court found a sentencing disparity to be an "extraordinary and compelling" reason for a defendant who only played a minor role in the crime and was given a longer sentence than all but one codefendant. 573 F. Supp. 3d 1013, 1017 (D. Md. 2021). In that case, the sentencing judge expressed concern over the potential sentencing disparity and was assured by the prosecutor that higher sentences would also be sought for the codefendants. *Id.* at 1018. However, the codefendants were later sentenced to significantly lower sentences, over 100 months lower in some cases. *Id.* at 1017. In his request for compassionate release, the defendant included a letter from the sentencing judge which stated the defendant's substantially longer sentence could "be at odds with [the judge's] stated desire to avoid sentencing disparity in this case." *Id.* at 1018. The district court found the sentencing disparity between codefendants to be "extraordinary and compelling" and granted the defendant compassionate release after also weighing the §3553(a) sentencing factors and emphasizing the weight of the sentencing disparity factor. *Id.* at 1020. Here, Defendant was not less culpable than his codefendant. He was warned of the potency of the heroin batch he was selling before his customer's death, and yet he continued to sell it. Dkt. 84 at 6. In fact, he continued to sell heroin even after the death of his customer. *Id.* 84 at 8.

In *United States v. Payton*, the court found a sentencing disparity between a defendant sentenced to 292 months and a codefendant who was originally sentenced to life but was later granted release to be "extraordinary and compelling." Crim. No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021). There, the court noted that the original sentences accurately reflected the difference in culpability. *Id.* The court found that the fact that the less culpable codefendant

7

would continue serving his full sentence after the more culpable codefendant became free constituted an "extraordinary and compelling" reason for release. *Id.; see also United States v. Stockton*, Crim. No. ELH-99-352, 2021 WL 1060347, at *14-15 (D. Md. Mar. 17, 2021) (granting defendant a sentence reduction after his more culpable codefendant, who was previously given a longer sentence than defendant, received a sentence reduction). Thus, the court concluded that the § 3553(a) sentencing factors weighed in favor of release, especially considering the defendant's completion of "a highly selective 8,000-hour electrician apprenticeship" while incarcerated. *Payton*, 2021 WL 927631, at *2. Here, the sentencing judge concluded that Defendant was originally given a longer sentence than his codefendant because Defendant was found to have multiple suppliers, and because the government failed to prove in the related case that his codefendant provided the fatal batch. Dkt. 103 at 5. His codefendant served his full sentence and did not benefit from a sentence reduction that could create a disparity in their sentences.

Defendant also claims that his criminal history category overrepresents the seriousness of his crime. Dkt. 127 at 19. He points to the fact that marijuana possession, which composed three of his prior convictions, is no longer illegal in Virginia. Dkt. 127 at 20. Accordingly, Defendant contends that his prior convictions for marijuana possession created a disparity in the sentence he would receive today and the sentence he actually received from the court. Dkt. 127 at 21. Defendant cites two Fourth Circuit cases in support of his argument that the court should consider the nature of his offenses. Dkt. 127 at 19 (citing *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *United States v. Dixon*, 318 F.3d 585, 588 (4th Cir. 2003)). However, both of those cases involved appeals to departures from the sentencing guidelines at the sentencing stage, not post-conviction compassionate release petitions. *Moreland*, 437 F.3d at 427; *Dixon*, 318 F.3d at 587.

Defendant also directs the Court's attention to the *McCoy* opinion, where that court based the defendants' reduction in large part on the disparity between their sentence and the sentence a defendant would receive for the same crime today. *McCoy*, 981 F.3d at 285-86. Notably, however, the difference in sentencing alone was not dispositive. *Id.* at 286. The court also considered the age of the defendants at the time of the offense, the portion of their sentences already served, and their rehabilitation while incarcerated. *Id.* There, the defendants were relatively young at the time of the crimes and had already served 17-25 years for their offenses. *Id.* By contrast, in the instant case, Defendant has not even served half of his 15-year sentence.

## B. COVID-19

Defendant also claims that he is entitled to compassionate release because of his risk of contracting COVID-19. However, for the risk of contracting COVID-19 to be considered "extraordinary and compelling" under § 3582(c)(1)(A), Defendant must "show[] *both* a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (emphasis added). Defendant has failed to show a particularized susceptibility to COVID-19 or a particularized risk of contracting COVID-19 at FCI Cumberland.

To show a particularized susceptibility to COVID-19, "a defendant must do more than merely point to a condition that constitutes a COVID-19 risk factor." *United States v. Davis*, 581 F. Supp. 3d 759, 764 (E.D. Va. 2022). Particularized susceptibility requires a defendant to "provide evidence establishing why their condition is so severe that it warrants a sentence reduction." *Id.* A particularized risk of contracting COVID-19 at a prison facility requires a defendant to show a higher risk of contracting COVID-19 in prison than in the general public. *See Feiling*, 453 F. Supp. 3d at 841-42 (finding that a defendant failed to show a particularized risk of

9

contracting COVID-19 in his facility because his wife, who he would share a home with, was high-risk for COVID-19).

Defendant points to several COVID-19 risk factors to justify his release. In his Motion, Defendant "reallege[d] and reincorporate[d]" the COVID-19 concerns raised in his prior Motion for Compassionate Release (Dkt. 115). Dkt. 127 at 22. Defendant does not raise new reasons for his vulnerability to COVID-19 in this Motion. Although Defendant may have conditions that put him at higher risk for COVID-19, he is also fully vaccinated and has already recovered from COVID-19 once. Dkt. 128 at 18-19. Courts in this district have found both vaccination and prior recovery to discount a defendant's argument of particularized susceptibility to COVID-19. *See United States v. Freeman*, Criminal No. 2:88-cr-76-2, --- F. Supp. 3d ---, 2022 WL 2967056, at *9 (E.D. Va. July 27, 2022) ("Defendant's inoculation vastly decreases his chances of suffering severe complications if he does ultimately become infected again in the future."); *United States v. Aquid*, 555 F. Supp. 3d 279, 282 (E.D. Va. 2021) ("Moreover, the Defendant has already tested positive for COVID-19 and recovered without any serious complications, which undercuts the argument that he is particularly susceptible to extreme illness or death from COVID-19, or that the Bureau of Prisons ('BOP') would be ineffective in managing his illness in the off-chance he contracts COVID-19 again.").

Defendant's inoculation against COVID-19 and his prior recovery from COVID-19 weigh against his claim of particularized susceptibility. Vaccinations are known to reduce the risk of an individual becoming seriously ill, being hospitalized, or dying of COVID-19. "Benefits of Getting a COVID-19 Vaccine," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Mar. 29, 2023). By receiving a vaccination, Defendant has mitigated his risk of becoming seriously ill with COVID-19. Further, his prior recovery from COVID-19

while incarcerated at FCI Cumberland shows that the prison facility is not incapable of handling a future COVID-19 infection.

Even if Defendant could show a particularized susceptibility to COVID-19, he cannot show a particularized risk of contracting COVID-19 at FCI Cumberland, where he is currently incarcerated. In this Motion, Defendant points to outbreaks that have infected hundreds of prisoners at various times as evidence of his risk at FCI Cumberland. Dkt. 127 at 22-23. As of March 29, 2023, FCI Cumberland is reporting zero confirmed COVID-19 cases among inmates and staff. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/;jsessionid=6B54AC490 01DEE382FCC99C7235522EC (last visited Mar. 29, 2023). The facility is operating with Level 1 modifications, which include recommending inmates and staff wear face masks indoors, requiring social distancing in health care units and patient care areas, and self-monitoring for symptoms among staff. BOP: COVID-19 Modified Operations Plan and Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Mar. 29, 2023). Additionally, all BOP facilities require high sanitation standards and testing for symptomatic inmates and inmates who have been exposed to COVID-19. *Id.* These standards and the low infection rate among inmates at FCI Cumberland indicate that Defendant does not have a particularized risk of contracting COVID-19 at the facility. Consequently, Defendant has failed to show "extraordinary and compelling" reasons justifying his release.[2]

---

[2] Defendant encourages this Court to also consider his rehabilitation as another reason justifying his release. Dkt. 127 at 23. Although rehabilitation alone is not an extraordinary or compelling reason justifying compassionate release, rehabilitation can be "considered as one among other factors[.]" *United States v. McCoy*, 981 F.3d 271, 286 n.9 (4th Cir. 2020) (citing 28 U.S.C. § 994(t)). While Defendant asks the Court to consider his good conduct and rehabilitation, he does not cite any evidence to support his rehabilitation argument. Regardless, taking steps to improve himself while incarcerated is not considered extraordinary circumstances justifying compassionate release. *United States v. Locust*, 591 F. Supp. 3d 12, 25 (E.D. Va. 2022). Rather, rehabilitation forms one of many baselines as to what prisoners are supposed to do while

III. CONCLUSION

Defendant has failed to establish that "extraordinary and compelling" reasons justify his release. Thus, it is unnecessary to proceed to the second step of the compassionate release analysis of weighing the sentencing factors. Accordingly, Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. 127) is DENIED.

IT IS SO ORDERED.

Alexandria, Virginia
April 5, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

---

incarcerated. *Id.* Although the court in *McCoy* found the defendants' exemplary prison records and rehabilitation significant, that was in conjunction with their ages at the time of the offenses and the substantial time already served by the defendants. *McCoy*, 981 F.3d at 288. Those factors are not present here.